**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRANDI AMES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-cv-561-CWB** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. Procedural History

Brandi Ames filed this action in the Circuit Court of Tallapoosa County, Alabama to seek relief against State Farm Fire and Casualty Company for failure to pay benefits allegedly due under a homeowner's insurance policy. (*See* Doc. 1-2). State Farm removed the proceedings to federal court on the basis of diversity jurisdiction. (*See* Doc. 1). Ames in turn moved to remand—asserting that State Farm had not met its removal burden as to the required amount in controversy. (*See* Doc. 7). State Farm has responded by explaining why the amount in controversy should be deemed sufficient. (*See* Doc. 10). Upon careful review and consideration of the parties' positions, the court concludes that removal jurisdiction was lacking and that these proceedings thus must be remanded to the Circuit Court of Tallapoosa County, Alabama.[1]

[1] Ames additionally seeks an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). (*See* Doc. 7 at p. 12). The court finds no basis for such an award in this instance. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."); *see also Bauknight v. Monroe Cnty., Fla.*, 446 F.3d 1327, 1332 (11th Cir. 2006) (denying request for attorney's fees and costs where "the removal was objectively reasonable and there are no unusual circumstances that require a different result").

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute … ." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) ("[L]ower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction … ."). Due to the inherent limitation on authority, it is incumbent upon a federal court to assure itself "at the earliest possible stage in the proceedings" that it possesses jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

With specific respect to actions filed in state court, removal to federal court is authorized in circumstances where a district court would have had "original jurisdiction" over the action. *See* 28 U.S.C. § 1441 ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). And it falls upon the removing party to establish that such jurisdiction exists. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal."); *see also City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction.").

Because removal infringes upon state sovereignty and implicates central concepts of federalism, any jurisdictional doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). Stated differently, a plaintiff's right to choose the forum and a defendant's right to remove "are not on equal footing." *Id*.

## III. Discussion

### A. Removal Jurisdiction

The Notice of Removal (Doc. 1) contains no assertion that removal was predicated upon federal question jurisdiction. Nor has the court's independent review of the record uncovered any issue that reasonably could be construed as "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. It is clear that removal jurisdiction rises or falls on application of diversity jurisdiction under 28 U.S.C. § 1332(a).

As reflected in the parties' written submissions (*see* Docs. 1, 7, 10, & 16), there is no dispute over diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).[2] The determinative issue here is whether the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a); *see also Parker v. Williams Plant Servs., LLC*, No. 16-cv-239, 2016 WL 3892454, at *3 (M.D. Ala. June 29, 2016) ("Removal jurisdiction requires both complete diversity and satisfaction of the requisite amount in controversy.").

---

[2] Any potential that a fictitiously identified defendant might have Alabama citizenship has no bearing on the removal jurisdiction analysis. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1396 n.11 (11th Cir. 2011) ("[T]hat the fictitious defendants were likely Georgia citizens did not destroy complete diversity because § 1441(a) requires that fictitious 'named' parties be disregarded for purposes of diversity jurisdiction."); *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) ("[E]ven when the fictitiously named defendants were 'likely' not diverse, we have 'disregarded' their citizenship.").

**B. Factual and Legal Allegations**

The core loss at issue consists of wind damage to Ames' residence (*see* Doc. 1-2 at p. 1, ¶ 5; *see also* Doc. 1-4 at p. 1, ¶ 5) that appears to have required some degree of roofing repair (*see* Doc. 1-2 at p. 2, ¶ 9; *see also* Doc. 1-4 at p. 2, ¶ 8). Ames asserts that the damage was covered under her homeowners' insurance policy with State Farm but that State Farm "refused to fully indemnify [her] as required by the policy." (*See* Doc. 1-2 at p. 2, ¶¶ 6, 13; *see also* Doc. 1-4 at p. 2, ¶¶ 6, 12). Ames additionally contends that State Farm "failed to conduct a reasonable investigation," "denied the claim for reasons which were not supported by the facts or by the policy language," and refused to reconsider "without any reasonably legitimate or arguable reason." (*See* Doc. 1-2 at p. 2, ¶¶ 13-15; *see also* Doc. 1-4 at p. 2, ¶¶ 12-14). In total, Ames claims to have suffered "monetary losses, loss of use of property, emotional distress, and [ongoing] expenses in attempting to recover benefits owed under the policy." (*See* Doc. 1-2 at p. 2, ¶ 16; *see also* Doc. 1-4 at p. 2, ¶ 15).

The original Complaint asserted only a state law claim for "Breach of Contract"—seeking damages to compensate Ames for "the cost to repair the property, loss of use, diminution in value, and other consequential damages." (*See* Doc. 1-2 at pp. 2-3, ¶ 21). The Amended Complaint echoed the contract claim but added state law torts for "Bad Faith – Refusal to Pay Insurance Claim" and "Bad Faith – Failure to Investigate Claim." (*See* Doc. 1-4 at pp. 2-3). The bad faith claims also added damages for "mental anguish, emotional distress and economic loss, together with punitive damages" due to "willful, malicious, and bad faith conduct." (*Id*. at pp. 3-4).

Neither the original Complaint (Doc. 1-2) nor the Amended Complaint (Doc. 1-4) makes an effort to quantify the damages at issue. The original Complaint generally asserted that damages are "in excess of twenty thousand dollars ($20,000.00) but less than seventy-four thousand

nine hundred ninety-nine and ninety-nine cents ($74,999.99), exclusive of interest, costs, and attorney's fees." (*See* Doc. 1-2 at p. 2, ¶ 8). The Amended Complaint similarly asserts that damages are "in excess of twenty thousand dollars ($20,000.00) exclusive of interest, costs, punitive damages and attorney's fees" but includes no ceiling. (*See* Doc. 1-4 at p. 1).

State Farm contends that the Amended Complaint facially resolves any question as to whether the amount in controversy exceeds the jurisdictional threshold of $75,000.00 under 28 U.S.C. § 1332(a). According to State Farm, the Amended Complaint satisfies the burden for removal jurisdiction because (1) it removes all reference to an upper limit on the damages request, (2) it seeks recovery under policy provisions that provide coverage well in excess of $75,000.00, and (3) it seeks an award of punitive damages. (*See* Doc. 1 at pp. 3-5; *see also* Doc. 10 at p. 4 & Doc. 16 at pp. 4, 6).

**C. Standard of Review**

As generally applicable to most civil actions—including in this instance—removal of proceedings to federal court is authorized at two distinct times. The first opportunity arises within 30 days from service of process. *See* 28 U.S.C. § 1446(b)(1); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). The second arises "within 30 days after receipt by the defendant, through service or otherwise, **<u>of a copy of an amended pleading</u>**, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3) (emphasis added). Because it is apparent from the record that State Farm did not remove proceedings to this court within the initial 30-day window under § 1446(b)(1), the propriety of removal must be evaluated under § 1446(b)(3).

It is beyond reasonable dispute that the amount in controversy is to be measured by a "preponderance of the evidence" standard when removal is predicated upon § 1446(b)(1). *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752, 754-55 (11th Cir. 2010). But when, as here, removal is taken belatedly under § 1446(b)(3), the Eleventh Circuit has held that the triggering document "must contain an unambiguous statement that clearly establishes federal jurisdiction." *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 at n.63 (11th Cir. 2007); *see also Pretka*, 608 F.3d at 762 (concluding that the "unambiguous statement" standard in *Lowery* was limited to removals taken pursuant to what is now § 1446(b)(3) and thus dicta as to removals taken pursuant to § 1446(b)(1)). The continued validity of a dual-standard approach is perhaps debatable in the aftermath of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011)[3] and the decision of the United States Supreme Court in *Dart v. Cherokee Basin Operating Co., LLC*, 574 U.S, 81 (2014).[4] That said, the Eleventh Circuit

[3] Among the changes enacted was inclusion of the following provision:

> (2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
> (i) nonmonetary relief; or
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c).

[4] *Dart*, albeit in the context of a case brought under the Class Action Fairness Act, discussed the "preponderance of the evidence" provision of § 1446(c)(2) without drawing any distinction between removals under § 1446(b)(1) and §1446(b)(2):

has not signaled any change—and this court has continued applying the "unambiguous statement" standard to § 1446(b)(3) removals. *See Foster v. Davis*, No. 19-cv-575, 2020 WL 411365, at *2 (M.D. Ala. Jan. 24, 2020) ("[R]equiring the removing party to 'unambiguously establish' the amount in controversy, differs from the traditional burden associated with proving the amount in controversy — preponderance of the evidence.") (citation omitted); *Thornton by & through Hawthorne v. United Am. Ins. Co.*, No. 18-cv-1028, 2019 WL 2321188, at *2 (M.D. Ala. May 29, 2019) ("Where the plaintiff timely challenges the propriety of removal under § 1446(b)(3), … a defendant must 'unambiguously establish federal jurisdiction.'") (citations omitted); *Pitts v. Ram Partners, L.L.C.*, No. 18-cv-28, 2018 WL 5786219, at *4 (M.D. Ala. Nov. 5, 2018) ("This court is persuaded … that the 'unambiguously establish' standard articulated in *Lowery*, 483 F.3d at 1214-15 is binding on this court and governs this case."); *Mitchell v. Cody Express, LLC*, No. 16-cv-165, 2016 WL 6246793, at *3 (M.D. Ala. Oct. 25, 2016) ("'[I]n assessing the propriety of removal' under the [third] paragraph of § 1446(b), 'the court considers the document received by the defendant from the plaintiff ... and determines whether that document and the notice of removal unambiguously establish federal jurisdiction.' The 'document'—in this case, Plaintiff's deposition testimony—'must contain an unambiguous statement that clearly establishes federal jurisdiction,' in this case, the amount in controversy.") (quoting *Lowery*, 483 F.3d at 1213 n.64); *Moore v. Wal-Mart Stores East, LP*, No. 15-cv-163, 2015 WL 5813164, at *4-6 (M.D. Ala. 2015) (same).

---

> This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

574 U.S. at 88.

**D. The First Amended Complaint does not contain an "unambiguous statement" showing that the amount in controversy requirement was satisfied at removal.**

Applying the "unambiguous statement" standard here leads quickly to the conclusion that removal jurisdiction was lacking. State Farm begins by pointing out that damages sought in the Amended Complaint exceed $20,000.00. (*See* Doc. 1 at p. 4, ¶ 10). Even so, a gap of $55,000.00 would be left before reaching the jurisdictional threshold. State Farm attempts to fill that gap by noting that the underlying insurance policy "allow[s] for benefits well in excess of $75,000," *i.e.*, dwelling protection of $280,700.00 and loss of use protection of $84,210.00 (*see id*. at p. 4, ¶ 12) along with contents protection of $210,525.00 (*see* Doc. 10 at p. 5). Coverage limits, however, say nothing as to what amount within those limits is at issue. *See Cox v. Auto Owners Ins. Co.*, No. 17-cv-490, 2017 WL 4453334, at *3 (M.D. Ala. Oct. 5, 2015) ("[I]n determining the amount in controversy, it is the value of the claim, rather than the insurance policy's limits, that determines the amount in controversy.") (citation omitted); *see also Lowe v. State Farm Fire & Cas. Co.*, No. 15-cv-877, 2016 WL 818658, at *6 (M.D. Ala. Feb. 16, 2016). Nor can State Farm rely upon punitive damages to meet its burden. (*See* Doc. 1 at p. 5, ¶ 13; *see also* Doc. 10 at pp. 4-5). It is true that punitive damages must be taken into consideration, *see Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010), yet it is clear that a generalized claim for punitive damages is insufficient. *See Thompson v. Target Corp.*, No. 18-cv-97, 2018 WL 1750754, at *3 (M.D. Ala. Mar. 21, 2018) (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1320 (11th Cir. 2001)); *see also Perkins v. Merion Realty Servs, LLC*, No. 14-cv-1171, 2015 WL 998198, at *4 (M.D. Ala. Mar. 6, 2015). And though elimination of an upper limit on damages between the original Complaint and the First Amended Complaint does provide the best indication that the amount in controversy potentially could be in excess of $75,000.00, it still falls well short of an "unambiguous statement that clearly establishes federal jurisdiction." *See Lowery*, 483 F.3d at 1213 n.63.

**E. The First Amended Complaint is not sufficient to establish the threshold amount in controversy by a "preponderance of the evidence."**

Even if applying a "preponderance of the evidence" standard, the result would be the same in this particular instance. Based upon the current record, there is no way for the court to conclude that the threshold jurisdictional amount was "more likely than not" satisfied at the time of removal. *See, e.g., Nelson v. Tuskegee Univ.*, No. 17-cv-512, 2018 WL 1719715, at *3 (M.D. Ala. Apr. 9, 2018). The First Amended Complaint contains no reference to invoices, estimates, or other materials that would in any manner quantify the type of property/contents damage or loss of use allegedly suffered—except that the total of those items presumably exceeds $20,000.00 as set out in the original breach of contract claim. *See Cox*, 2017 WL 4453334 at * 2 ("Absent from the complaint are any allegations from which one could draw any reasonable inference regarding the extent of damages."). Nor does the First Amended Complaint contain details about Ames' suffering or State Farm's conduct that would enable the court to discern in a non-speculative way the amount of mental anguish or punitive damages at issue. *See Lowe*, 2016 WL 818658 at *6 ("Plaintiff's allegations of mental anguish and suffering say nothing about the value of the claims no matter the seriousness of the general assertion."); *see also Benton v. Safeway Ins. Co. of Ala.*, No. 17-cv-95, 2017 WL 2374725, at *3 (M.D. Ala. May 11, 2017) ("The complaint contains no specific factual allegations that could provide any indication of the *degree* of reprehensibility of [the alleged] conduct.") (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)) (emphasis in original). Considering the nature of the case, the amount in controversy certainly could prove to exceed $75,000.00 exclusive of interest and costs. Nonetheless, to assume that outcome as more likely than not at this stage would invoke a conclusion that could be "'divined [only] by looking at the stars'—only through speculation—and that is impermissible." *Pretka*, 608 F.3d at 753-54 (citing *Lowery*, 483 F.3d 1209, 1215).

Beyond State Farm's bare assertions, there simply is no meaningful guidepost to which the court can tether an amount in controversy finding. All the court reasonably can glean from the contents of the First Amended Complaint is that Ames is seeking some amount greater than $20,000.00. And all the court knows of State Farm's conduct is that State Farm allegedly "failed to conduct a reasonable investigation and/or refused to fully indemnify [Ames] as required by the policy" and later "willfully failed and refused to [reconsider] without any reasonably legitimate or arguable reason." (Doc. 1-4 at p. 2, ¶¶ 12-14; *see also id*. at p. 3, ¶¶ 22-24 & p. 4, ¶¶ 27-30). Such allegations are largely conclusory, do not describe any specific conduct, and merely track the elements required by Alabama law for pursuing bad faith claims. Accordingly, "[n]either the 'value' of the claim nor the amount of the punishment can be determined in any principled manner." *Perkins*, 2015 WL 998198 at *5. To find the allegations here, without more, sufficient to establish the amount in controversy for removal purposes would have the practical effect of authorizing removal in every bad faith case—and possibly every punitive damages case—filed in state court. There is no precedent for that broad approach.[5]

---

[5] "This court's task is not to merely decide whether the punitive damages at issue in this case could *conceivably* satisfy the minimum jurisdictional requirement, but whether it is *more likely than not* that they do." *Arrington v. State Farm Ins. Co*., No. 14-cv-209, 2014 WL 2961104, at *7 (M.D. Ala. July 1, 2014) (citation omitted) (remanding case despite inclusion of bad faith claims); State Farm's citation to other punitive damages cases where the amount in controversy has been deemed satisfied does not sufficiently tip the scales. (*See* Doc. 1 at p. 5, ¶ 14). It is well recognized that "the facts regarding other cases tell us nothing about the value of the claims in this lawsuit." *Lowery*, 483 F.3d at 1221. And a similar attempt to use the same out-of-district cases recently has been rejected. *See McCray v. State Farm Fire & Cas. Co*., No. 24-cv-773, 2025 WL 794448, at *4 (M.D. Ala. Mar. 12, 2025); *see also Lowe*, 2016 WL 818658 at *7. As to State Farm's citation to this court's decision in *Pullum v. Ford Motor Co*., No. 19-cv-120, 2019 WL 2578948, at *2 (M.D. Ala. June 21, 2019), it is observed that the complaint in that instance contained greater facts regarding the defendant's alleged conduct, *see id*. at *1. This court also has refused to apply that decision so broadly as to render all punitive damages cases automatically removable. *See McCray*, 2025 WL 794448 at *4 ("Here, Defendant has not shown why, other than its status as a large corporation, a jury would award substantial punitive damages under the facts alleged."). Moreover, the Amended Complaint acknowledges that some level of investigation was performed

"[T]o the extent that competing inferences may be drawn from the specific factual allegations of the complaint, the court must indulge those inferences most favorable to remand." *Benton*, 2017 WL 2374725 at *2. And to find here that jurisdiction was present at the time of removal would require precisely the opposite. *See also id*. at *2 ("[I]t is axiomatic that, on a motion to remand, all questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court … .") (citing *Burns*, 31 F.3d at 1095); *see also Pacheco de Perez v. AT&T Co*., 139 F.3d 1368, 1373 (11th Cir. 1998) ("[T]he removing party bears the burden of showing the existence of federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)); *Parker*, 2016 WL 3892454 at *5 ("While it is legally possible that Plaintiff could recover more than the jurisdictional amount, WPS's burden in sustaining removal jurisdiction is much heavier.").[6]

---

(*see* Doc. 1-4 at pp. 2, ¶ 12) and is devoid of allegations of intentional misrepresentations of the type that underpin other cases cited by State Farm, *see Stubbs v. State Farm Fire & Cas. Co.*, No. 12-cv-2186, 2013 WL 980313, at *5 (N.D. Ala. Mar. 8, 2013) and *Nettles v. State Farm Mut. Fire & Cas. Ins. Co.*, No. 24-cv-196, 2024 WL 429982, *2 (M.D. Ala. Feb. 7, 2025), which leaves the court with little more than "relatively threadbare allegations of bad faith … to consider when drawing upon its experience and common sense." *See Lowe*, 2016 WL 818658 at *7.

[6] It additionally should be noted that State Farm has pointed out that Ames "has not submitted an affidavit to support that at the time the amended complaint was filed, she did not seek more than the jurisdictional amount or that she will not accept a jury award for more than the jurisdictional amount, if awarded." (*See* Doc. 10 at p. 5). While it is true that Ames could elect to do so as a means for obtaining remand, she is under no such obligation in order for remand to remain a viable option. *See Williams*, 269 F.3d at 1320 ("There are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof on the jurisdictional issue."); *Cox*, 2017 WL 4453334 at *3 ("The mere fact that Cox has declined to stipulate to less than $75,000.00 in damages is insufficient for the court to conclude that it is more likely than not that his damages exceed that amount."). The record does not contain sufficient evidence that could be coupled with such a refusal so as to satisfy the amount in controversy requirement. *See Benton*, 2017 WL 2374725 at *3 ("Due to the lack of any factual detail in the complaint indicating the extent of compensatory damages at issue or the reprehensibility of Safeway's alleged conduct for the purpose of ascertaining punitive damages, the court declines to engage in 'impermissible speculation' and 'hazard a guess on the jurisdictional amount in controversy.'") (quoting *Pretka*, 608 F.3d at 752).

## IV. Conclusion

For the reasons stated above, the court concludes that State Farm has not met its burden of establishing removal jurisdiction and that this case must be remanded. It thus is **ORDERED** that the request for remand (*see* Doc. 7) is **GRANTED** to the extent it seeks a remand; however, the request is **DENIED** to the extent it also seeks an award of costs, expenses, and attorney's fees (*see* Doc. 7 at p. 12). The clerk of court is hereby **DIRECTED** to take the necessary steps to effectuate a remand to the Circuit Court of Tallapoosa County, Alabama.

**DONE** this the 11th day of September 2026.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**